382 So.2d 433 (1980)
George Gerald PRICE and Dorothy Vail Price Garchinsky, Appellants,
v.
Hilda PRICE, Individually and As Executrix of the Estate of George L. Price, Deceased, Appellees.
No. NN-195.
District Court of Appeal of Florida, First District.
April 16, 1980.
*434 Michael M. Hamlin and Michael B. Swindle, Orlando, for appellants.
Daniel C. Perri and W.H.F. Wiltshire of Harrell, Wiltshire, Stone & Swearingen, Pensacola, for appellees.
*435 LARRY G. SMITH, Judge.
Appellants, the adult children of deceased parents, appeal an order adjudging them in contempt of court for their failure to pay an award of attorney's fees entered against them in a declaratory judgment action. The issue is whether the attorney's fee award in this case falls within the category of debts for which "no person shall be imprisoned," Article I, § 11, Florida Constitution, or within the category of awards of alimony, child support, and suit money in domestic relations cases, which the courts of Florida have long since declared to be excluded from the constitutional prohibition. We reverse the trial court's contempt order because we find the money judgment here is subject to the constitutional provision, precluding the court's use of its contempt power and a sentence of imprisonment for enforcement.
The litigation between appellants and appellee grew out of the following circumstances: The 1962 divorce decree between the appellants' parents contained provisions incorporating agreements by their father, George L. Price, to pay to their mother certain sums of money for the support and education of appellants. The divorce decree provided, among other things, for appellants' father to provide security for his obligations to educate and support appellants by means of his Last Will and Testament, in event of his remarriage. Shortly after the divorce, the father married appellee, Hilda Price. Prior to the remarriage, the father satisfied the requirements of the decree by making the Will as agreed, and by entering into a prenuptial agreement with appellee, also required by the decree, in which she relinquished dower in his estate. Appellants' mother then died in 1968, subsequent to which their father and appellee cancelled the prenuptial agreement, and their father made a new Will, containing no provision for appellants. After the father, George L. Price, died in 1972, appellants initiated this litigation against their stepmother, Hilda Price, individually and as executrix of the estate of George L. Price, deceased, for a determination of their rights, if any, under the divorce decree and the Will made by their father prior to his remarriage. The trial court found that all obligations of appellants' father under the divorce decree had been satisfied prior to his death, since both appellants had reached their majority, appellant George Gerald Price had completed his education, and appellant Dorothy Vail Price Garchinsky had married. The trial judge entered an award of $18,000.00 attorney's fees against appellants, as the losing parties, and upon their failure to pay the first installment, entered the order which is the subject of this appeal, finding appellants in contempt of court and ordering their imprisonment.
We begin our discussion of the issues by observing that since appellants failed to timely perfect an appeal from the judgment awarding attorney's fees, we are foreclosed from considering whether the award of fees itself was proper. However, this limitation upon our review does not preclude our examination of the basis for the award to determine whether it falls into the narrow category in which enforcement by contempt is permissible.
The applicable statute, Section 61.16, Florida Statutes, provides:
The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter, including enforcement and modification proceedings. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.
Appellee argues, in support of the contempt order, that since the proceeding below was for the enforcement of a divorce decree, it was a "proceeding under this Chapter," (Chapter 61, Florida Statutes). Therefore, according to appellee, the attorney's fees were awarded under Section 61.16. It follows, appellee argues, that appellants are subject to contempt punishable by imprisonment for nonpayment. We must reject these contentions.
*436 We first observe that a "party" entitled to an award of attorney's fees under the statute must, by its terms, be a party either obligated by the divorce or dissolution judgment to pay certain sums to the other party, or to receive payment from the other party.[1] The appellee, Hilda Price, was neither. It is unnecessary for us to decide whether the estate, under the facts of this case, or any case, would be a "party" within the provisions of the statute. Here, it is clear that the trial court based the award and the contempt order upon the erroneous assumption that Hilda Price was a party entitled to make a claim for attorney's fees under the statute. In this connection, although appellee was sued in a dual capacity  both individually and as executrix  neither the order awarding attorney's fees nor the contempt order contains any language indicating an intention to award fees to the estate of George L. Price. The contempt order contains the following finding:
... and the court further finds that because the defendant Hilda Price is presently suffering from an advanced stage of cancer and based on prior testimony that she is in financial distress and unable to pay her attorneys ... (emphasis supplied)
Thus, the court's contempt order refers only to the medical and financial condition of Hilda Price, making it obvious that the award of attorney's fees was based upon the financial needs of Hilda, not the estate.
We fail to see any justification for the contention that the suit involved any claim against Hilda Price within the purview of Section 61.16. Furthermore, although the case is not cited by either party, in our judgment appellee is not an "aggrieved party," one who "has succeeded to the rights of an aggrieved parties," or "has a pecuniary interest in the exact right protected by the order violated," so as to be entitled to maintain a proceeding for civil contempt, as in Plante v. Watson, 350 So.2d 1131 (Fla. 2nd DCA 1977). Hilda Price was not a party to the divorce proceeding, and she had no duty or obligation to appellants under the decree. As a beneficiary of her deceased husband's estate, she no doubt claimed rights to funds or property which constituted the estate.[2] This lawsuit against Hilda was actually filed in her deceased husband's probate proceeding, although a separate action was also filed, both cases being consolidated by order of the trial court. We think it is obvious that Hilda's rights and interests were determinable under the probate laws of Florida (Chapters 732-735, Florida Statutes), and not under Chapter 61, which deals exclusively with matters relating to dissolution of marriage.
Although as stated, we can find no basis upon which Hilda Price can be considered a "party" to whom attorney's fees may be awarded under Section 61.16, Florida Statutes, even if we assume, for purposes of argument, that such an award would be proper, we are nevertheless of the opinion that the contempt remedy is not available here. The statute itself says nothing about contempt. The rule permitting the use of the contempt powers for enforcement of payments in domestic relations cases is of court  not legislative  origin. Phelan v. Phelan, 12 Fla. 449 (1868); Bronk v. State, 43 Fla. 461, 31 So. 248 (1901); State ex rel. Krueger v. Stone, 137 Fla. 498, 188 So. 575 (1939); Orr v. Orr, 141 Fla. 112, 192 So. 466 (1939). The justification for the use of this drastic remedy, as an exception to the constitutional prohibition against imprisonment for debt, has been expressed in various ways; but the approval of its use has consistently depended *437 upon the assumed necessity for special protection and enforcement of rights growing out of the marriage relationship.[3] Thus, in Bronk, the husband's obligation for alimony was held not a "debt," in the constitutional sense, but "more in the light of a personal duty due not alone from the husband to the wife, but from him to society... ." (Ibid., at 31 So. 252). A later case, Orr, found the duty to be based upon "disobedience of the court's order, as well as the necessity of the spouse." The court in Bronk referred to an earlier case, Phelan, in which the award of "suit money" was traced to the English ecclesiastical courts, the purpose of the award being "to aid the wife to have justice done when she is without means, ... ." (Phelan, at 456). The constitutional objection to imprisonment for refusal to pay suit money, as contrasted with alimony, was raised as early as 1885, but was not decided. See Sanchez v. Sanchez, 21 Fla. 346 (1885). When the question was finally reached in State ex rel. Krueger v. Stone, the court admitted no distinction between alimony and suit money, and held the constitutional objection "wholly untenable" (Krueger, 188 So. at 576) on the authority of Bronk, which regarded the duty to pay as one owed to society.
The 1971 legislature, perhaps anticipating a 1978 Supreme Court decision holding a family allowance statute unconstitutional because of its discrimination on the basis of sex (In re Estate of Reed, 354 So.2d 864 (Fla. 1978)), amended Chapter 61 to make both alimony and attorney's fees available to either husband or wife in dissolution litigation. That the wife, as well as the husband, was made subject to liability for alimony and attorney's fees did not alter the basic principle that only obligations of the parties to the marriage relationship, owed to each other,[4] are to be treated differently from "debts" for which imprisonment may not be imposed under the constitution. It may not be so clear that the use of contempt to enforce a wife's obligation to pay alimony or attorney's fees to her husband may be justified in the same "duty owed to society" sense as applied against husbands years ago. But the underlying premise is still the special interest society has in requiring a degree of continuing financial responsibility of one mate, or former mate, for the other (or their offspring), and in preventing one party from being disadvantaged by the other in litigation seeking enforcement of financial obligations growing out of the marriage relationship.
As this court has held, the purpose in awarding fee money in divorce and dissolution proceedings is simply "to ensure that both parties will have reasonably the same ability to secure competent legal counsel." Valpariso Bank and Trust Co. v. Sims, 343 So.2d 967 (Fla. 1st DCA 1977). There is, significantly, an element of mutuality inherent in this rule; that is, the object is to place the parties on an equal footing in litigation. Here, no one would suggest that appellee-Hilda, not being a party to the marriage out of which this litigation grew, would have been subject to imprisonment for nonpayment of attorney's fees to the appellants, if appellants had been the winning parties. The reason is simple: No marital duty would be served by such a result. State ex rel. Cahn v. Mason, 148 Fla. 264, 4 So.2d 255 (1941), applied this concept in holding that a provision in a divorce decree requiring the husband to make payments to a bank on notes owed by the parties could not be enforced by contempt, because the obligation "was not based upon any marital duty of the husband to the wife." Cahn, at 258.
*438 The principles we have followed in determining this case have recently been applied by this court in a case relating to contempt as a remedy for enforcement of child support payments. Smith v. Morgan, 379 So.2d 1052 (Fla. 1st DCA 1980), held that a father, whose obligation for child support had been abated because the child began residing with the father, could not be held in contempt of court for his nonpayment of child support arrearages. In its opinion, the court stated:
The extraordinary remedy of contempt is applicable to divorce judgments for child support because of the public necessity for insuring the support of minor children. When the public necessity is no longer present, the purpose and justification for the extraordinary remedy of contempt expires. (Smith v. Morgan, at 1053)
The court also referred to Wilkes v. Revels, 245 So.2d 896 (Fla. 1st DCA 1970), holding that the court has no jurisdiction to enforce child support payments by use of the contempt power on accrued arrearages after the child has reached majority. We reiterate the holdings of these decisions by stating simply that contempt cannot be used where its "purpose and justification" has expired.
Finally, the use of contempt, under the circumstances presented here, simply to vindicate the authority of the court, cannot be justified. See Pugliese v. Pugliese, 347 So.2d 422 (Fla. 1977).
The order adjudging appellants in contempt is reversed.
MILLS, C.J., and ROBERT P. SMITH, Jr., J., concur.
NOTES
[1] A non-parental custodian of children, entitled to enforce child support provisions of a court order or judgment, would no doubt qualify as a "party" entitled to the benefit of the statute. See Dykes v. Dykes, 104 So.2d 598 (Fla. 3rd DCA 1958), and Rule 1.590, Florida Rules of Civil Procedure.
[2] Although on the record before us we are unable to determine with certainty what the estate assets consisted of, we have an indication from a statement in appellee's brief, which informs us that appellants, if successful in this litigation, would have been entitled to $150,000.00 from the proceeds of a life insurance policy.
[3] See Phelan v. Phelan, 12 Fla. 449 (1868), at 454-455, where the court, commenting upon the "many differences" between divorce suits and other chancery cases, acknowledged that "most elementary writers" have designated them as "a suit sui generis..."; and further, "this, like many other of its peculiar incidents, arises from the fact that the public have an interest in these suits, and the duty of the court is to protect that [sic] interests even at the expense of the wishes of the parties themselves".
[4] See footnote 1.